**GUCOVSCHI LAW FIRM, PLLC.**
Adrian Gucovschi (State Bar No. 360988)
Nathaniel Haim Sari (State Bar No. 362634)
140 Broadway, 46th Floor
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com
nathaniel@gucovschilaw.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
jglatt@bursor.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEXANDER MERCADO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOLI NUTRITION INC.,<br><br>Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Alexander Mercado ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Goli Nutrition Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of himself and all similarly situated consumers who purchased Goli gummy dietary supplements marketed as zero sugar (collectively, the "Products").[1]

2. Defendant markets and advertises the Products on their front labels as containing "ZERO SUGAR" (the "Zero Sugar Representation"). However, unbeknownst to consumers, the Products contain sugar in the form of allulose. Allulose is a monosaccharide and therefore a sugar under the applicable federal labeling standards.

3. Based on their ingredient composition and label declarations, the Apple Cider Vinegar and Ashwagandha+ Products contain, on information and belief, approximately 2 grams of allulose per labeled serving, and the Pre+Post+Probiotics Product contains, on information and belief, approximately 1 gram per labeled serving. The Products' labels also list allulose without the ingredient marker prescribed for a zero-sugar claim. 21 C.F.R. § 101.60(c)(1)(i)–(ii). Defendant's Zero Sugar Representation is therefore false, misleading, and impermissible.

4. Accordingly, Plaintiff brings claims against Defendant for violations of: (1) New York General Business Law § 349; (2) New York General Business Law § 350; (3) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; (4) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq.; (5) materially similar state consumer-protection statutes; and (6) unjust enrichment.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is a class action in which the aggregate claims of the proposed Classes

[1] The Products are: (1) Goli Zero Sugar Apple Cider Vinegar Gummies ("Apple Cider Vinegar"); (2) Goli Zero Sugar Ashwagandha+ Gummies ("Ashwagandha+"); and (3) Goli Zero Sugar Pre+Post+Probiotics Gummies ("Pre+Post+Probiotics").

exceed $5,000,000, exclusive of interest and costs, and at least one member of the proposed Classes is a citizen of a state different from Defendant.

6. This Court has personal jurisdiction over Defendant because Defendant has its principal place of business in California and therefore is at home in this State.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business in this District and a substantial part of the events giving rise to Plaintiff and the class members' claims took place in this District.

## PARTIES

8. Plaintiff Alexander Mercado is a citizen of New York residing in the Bronx, New York. In or around April 2026, Plaintiff purchased a 60-count bottle of Goli Zero Sugar Apple Cider Vinegar Gummies for his personal use from a local TJ Maxx store in the Bronx, NY, for approximately $11.99. Before making his purchase, Plaintiff saw and relied on the Product's prominent "ZERO SUGAR" representation. Based on that representation, Plaintiff reasonably believed that the Product contained no sugar. The representation was part of the basis of Plaintiff's bargain, and he would not have purchased Apple Cider Vinegar on the same terms had he known it was untrue. Plaintiff also paid a price premium because of Defendant's false and misleading Zero Sugar Representation but did not receive the benefit of his bargain because each serving of Apple Cider Vinegar contains approximately 2 grams of allulose. Had Plaintiff known the truth, he would not have purchased the Product or would have paid substantially less.

9. Plaintiff remains interested in purchasing dietary supplements that truly are zero sugar. However, he cannot know for certain whether Defendant's false labeling has been or will be corrected, and the Products' composition may change over time. If Defendant continues to make the Zero Sugar Representation, Plaintiff will be unable to make informed purchasing decisions and is likely to be misled again unless Defendant is required to ensure that the Products' labeling is accurate. Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, or formulation of food products. Neither Plaintiff nor reasonable consumers have the specialized knowledge needed to determine independently whether allulose is a sugar.

10. Defendant Goli Nutrition Inc. is a Canadian corporation with its principal place of business and headquarters in West Hollywood, California. Defendant formulates, labels, distributes, and/or sells the Products throughout California and the United States, including this District.

## FACTUAL ALLEGATIONS

### A. Consumers Seek Out and Pay More for Products That Contain No Sugar

11. Consumer demand for products without sugar is well documented. A 2022 nationwide survey found that 73% of Americans ages 18 to 80 reported trying to limit or avoid sugar.[2]

12. That demand accords with widespread public-health guidance. The 2025–2030 Dietary Guidelines for Americans state that no amount of added sugars is recommended or considered part of a healthy or nutritious diet and that one meal should contain no more than 10 grams of added sugars.[3] The World Health Organization recommends limiting free sugars to less than 10 percent of total daily energy intake and states that limiting them further to 5 percent or less may provide additional health benefits.[4] The American Heart Association recommends limiting added sugars to no more than 6 percent of daily calories.[5]

13. Food and beverage manufacturers are aware of this demand and of the premium consumers will pay to satisfy it. Products labeled "sugar free," "no sugar," and "zero sugar" command higher prices than comparable products that do not bear those claims, and manufacturers reserve the front principal display panel of their packaging for the claims they believe will most motivate a purchase.

14. Defendant has capitalized on that demand. It sells the Products containing allulose — a monosaccharide sugar — while representing them as "Zero Sugar." Defendant thereby obtained an

---

[2] International Food Information Council, 2022 Food & Health Survey 57 (May 18, 2022), https://ific.org/wp-content/uploads/2022/06/IFIC-2022-Food-and-Health-Survey-Report-May-2022.pdf.

[3] U.S. Department of Health and Human Services & U.S. Department of Agriculture, Dietary Guidelines for Americans, 2025–2030, at 5 (Jan. 2026), https://cdn.realfood.gov/DGA.pdf

[4] World Health Organization, Healthy Diet (Jan. 26, 2026), https://www.who.int/news-room/fact-sheets/detail/healthy-diet

[5] American Heart Association, Added Sugars, https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/added-sugars.

unfair competitive advantage over competitors that accurately label comparable sweetened dietary supplements.

**B. <u>Defendant's Zero Sugar Representation and Warranties</u>**

15. Defendant prominently represents on the front principal display panels of the Products that they are "ZERO SUGAR." This statement is referred to herein as the "Zero Sugar Representation." The Products and the Zero Sugar Representation are depicted below:

**<u>Goli Zero Sugar Apple Cider Vinegar Gummies — 60 Count</u>**

## 01 Apple Cider Vinegar Gummies — 60 Count

PRINCIPAL DISPLAY PANEL




SUPPLEMENT FACTS / INFORMATION PANEL




FRONT-LABEL CLAIM




- "ZERO SUGAR" claim
- Supplement Facts rows
- Allulose ingredient disclosure

BACK-LABEL DETAIL

CARBOHYDRATE / SUGAR ROWS




OTHER INGREDIENTS




Physical front and back labels shown from the supplied product images.

**Goli Zero Sugar Ashwagandha+ Gummies — 60 Count**

## 02 Ashwagandha+ Gummies — 60 Count

PRINCIPAL DISPLAY PANEL




SUPPLEMENT FACTS / INFORMATION PANEL




FRONT-LABEL CLAIM




- "ZERO SUGAR" claim
- Supplement Facts rows
- Allulose ingredient disclosure

BACK-LABEL DETAIL

CARBOHYDRATE / SUGAR ROWS




OTHER INGREDIENTS



<u>**Goli Zero Sugar Pre+Post+Probiotics Gummies — 60 Count**</u>

## 03 Pre+Post+Probiotics Gummies — 60 Count

PRINCIPAL DISPLAY PANEL




SUPPLEMENT FACTS / INFORMATION PANEL




FRONT-LABEL CLAIM




- "ZERO SUGAR" claim
- Supplement Facts rows
- Allulose ingredient disclosure

BACK-LABEL DETAIL

CARBOHYDRATE / SUGAR ROWS




OTHER INGREDIENTS



16. The Zero Sugar Representation communicates to reasonable consumers that the Products contain no sugar. That is the plain and ordinary meaning of "ZERO SUGAR."

17. The Zero Sugar Representation is absolute, objective, and quantitative claims concerning whether the Products contain sugar. That claim is demonstrably false: each labeled serving of the Apple Cider Vinegar and Ashwagandha+ Products contains approximately 2 grams of allulose — a sugar — and each labeled serving of the Pre+Post+Probiotics Product contains approximately 1 gram of allulose.

18. The Products' information panels reinforce, rather than cure, the materially misleading impression created by the Zero Sugar Representation. The Supplement Facts panels declare 0 grams of Total Sugars and 0 grams of Added Sugars and do not disclose that allulose is a sugar, so they do not cure the materially misleading impression created by the Zero Sugar Representation.

**C. <u>Allulose Is a Sugar</u>**

19. Allulose is a sugar.

20. Chemically, allulose is a monosaccharide. It is the C-3 epimer of D-fructose, meaning that allulose and fructose have the same molecular formula and connectivity but differ in the spatial orientation of a hydroxyl group at the third carbon. "D-allulose, a C-3 epimer of D-fructose, is a rare monosaccharide used as a food ingredient or a sweetener."[6] Allulose is accordingly "a rare sugar," and "a monosaccharide that is low in calories and that maintains approximately 70% of sweetness relative to sugar."[7]

21. Allulose is not merely a sugar as a matter of chemical classification. It is used as one. Allulose has "70% of the sweetness of sucrose, which means it is viewed as a potential alternative sweetener."[8] The food science literature describes allulose and other rare sugars as "monosaccharides

[6] Han-Joo Maeng *et al.*, Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol, 8 Foods art. 448, at 1 (2019), https://doi.org/10.3390/foods8100448.

[7] Youngji Han et al., Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial, 10 Nutrients art. 2010, at 1–2 (2018), https://doi.org/10.3390/nu10122010.

[8] Maeng *et al.*, supra note 6, at 2.

with sweetness similar to those as caloric sugars, but [with] low caloric values," which "are now widely used as sugar substitutes."[9]

22. Because allulose is less sweet than table sugar, it is used in gram-scale quantities as a bulk sweetener. High-intensity sweeteners such as saccharin, aspartame, acesulfame potassium, neotame, sucralose, and advantame are approximately 200 to 20,000 times as sweet as sucrose.[10] By contrast, allulose has approximately 70% of sucrose's sweetness and is used in gram-scale quantities as a bulk sweetener.[11]

23. Allulose also behaves like sugar in food. "It is convenient for the food industry to use D-allulose, as its chemical properties are similar to those of fructose in terms of solubility, water activity, and viscosity."[12] It is used as "a partial replacement of added sugars."[13] Allulose is "widely regarded as a promising substitute for sucrose"—that is, a substitute for table sugar, and one that is itself a sugar.[14]

24. In the Products, allulose is present in gram-scale quantities. Each serving of the Apple Cider Vinegar and Ashwagandha+ Products contains approximately 2 grams of allulose, and each serving of the Pre+Post+Probiotics Product contains approximately 1 gram.

25. The Food and Drug Administration ("FDA") identifies allulose as a sugar. In its 2016 Nutrition Facts rulemaking, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the

---

[9] *Maeng et al.*, *supra* note 6, at 9–10.

[10] U.S. Food & Drug Administration, Aspartame and Other Sweeteners in Food, https://www.fda.gov/food/food-additives-petitions/aspartame-and-other-sweeteners-food (last visited Aug. 18, 2026).

[11] Mengting Tao, Wenli Zhang & Wanmeng Mu, D-Allulose: A New Generation of Potential Bulk Sweeteners in the Food Industry, 73 J. Agric. & Food Chem. 27,833, 27,833–35 (2025) (Viewpoint), https://doi.org/10.1021/acs.jafc.5c13620.

[12] *Han et al.*, supra note 7, at 10.

[13] *Id.*

[14] Wenli Zhang *et al.*, D-Allulose, a Versatile Rare Sugar: Recent Biotechnological Advances and Challenges, 63 Critical Revs. Food Sci. & Nutrition 5661, 5661 (2023) (published online Dec. 29, 2021), https://doi.org/10.1080/10408398.2021.2023091.

substance.[15] The current regulation continues to define Total Sugars as "the sum of all free mono- and disaccharides" and does not exclude allulose. 21 C.F.R. § 101.9(c)(6)(ii).

26. The Calorie Control Council likewise describes allulose under the heading "Allulose is a Naturally Occurring Sugar" and states that "[a] monosaccharide, or simple sugar, allulose is absorbed by the body, but not metabolized, so it is nearly calorie-free."[16]

27. Allulose appears second in each Product's Other Ingredients statement, immediately after soluble tapioca fiber and before water, pectin, and every remaining ingredient. Under federal labeling law, ingredients must be listed in descending order of predominance by weight unless ingredients present at 2 percent or less are grouped after an appropriate quantifying phrase. 21 C.F.R. § 101.4(a)(1)–(2), (g); *see id.* § 101.36(d). The Products' Other Ingredients statements use no such grouping phrase. Allulose is therefore present in at least as great an amount by weight as every other ingredient in those statements except soluble tapioca fiber.

28. Each serving of the Ashwagandha+ and Apple Cider Vinegar Products declares 4 grams of Total Carbohydrate, 2 grams of Dietary Fiber, and 0 grams of Total Sugar and Added Sugar. Each serving of the Pre+Post+Probiotics Product declares 5 grams of Total Carbohydrate, 4 grams of Dietary Fiber, and 0 grams of Total Sugar and Added Sugar. None of the Supplement Facts panels contains a sugar-alcohol line, and the Pre+Post+Probiotics Product's label separately states "No Sugar Alcohols." Total Carbohydrate is calculated by subtraction and expressed to the nearest gram. 21 C.F.R. § 101.9(c)(6). After subtracting the declared Dietary Fiber and declared sugars, approximately 2 grams of carbohydrate per serving of the Ashwagandha+ and Apple Cider Vinegar Products, and approximately 1 gram per serving of the Pre+Post+Probiotics Product, remain as nonfiber carbohydrate not separately identified on the panels.

29. No other ingredient can supply those carbohydrates. The dietary ingredients declared in the Ashwagandha+ Product total approximately 310 milligrams, and those in the Pre+Post+Probiotics Product total 80 milligrams. The Apple Cider Vinegar Product declares

[15] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,796 (May 27, 2016).

[16] Calorie Control Council, Allulose, https://caloriecontrol.org/ingredients/sweeteners/allulose/ (last visited Aug. 11, 2026).

approximately 1,008 milligrams of dietary ingredients, which cannot supply 2 grams of carbohydrate even if composed entirely of carbohydrate. Water contributes none. Stevia extract is a high-intensity sweetener used in minute quantities. Pectin, natural flavors, citric acid, sodium citrate, and malic acid all follow allulose in the Other Ingredients statements and are used at milligram levels. The fruit and vegetable juice is identified on the label as a coloring agent and, in the Apple Cider Vinegar and Pre+Post+Probiotics Products, is listed ahead of only stevia extract and the trace color powders. Juice solids consist predominantly of free mono- and disaccharides, which are sugars within the meaning of 21 C.F.R. § 101.9(c)(6)(ii). Because each Product declares 0 grams of Total Sugar, the juice cannot be contributing carbohydrate on a gram scale without rendering that declaration understated on an additional ground.

30. Soluble tapioca fiber is the only Other Ingredient listed before allulose, and the panels separately declare the Products' Dietary Fiber. The approximately 2-gram and 1-gram differences described above remain after those declared fiber amounts are subtracted. To the extent the soluble tapioca fiber contains free mono- or disaccharides outside the declared Dietary Fiber, those compounds are themselves "sugars" within the meaning of 21 C.F.R. § 101.9(c)(6)(ii). Either the remaining carbohydrate is allulose, or the Products contain additional free sugars. Under either alternative, the Products contain sugars in excess of the 0.5-gram threshold.

31. Taken together—allulose's position ahead of every Other Ingredient but the declared fiber source, the nonfiber carbohydrate remaining after subtraction, the absence of any sugar alcohol, and the absence of any other gram-scale carbohydrate source—these facts support a reasonable inference that allulose supplies the remaining carbohydrate. On information and belief, each serving of the Ashwagandha+ and Apple Cider Vinegar Products contains approximately 2 grams of allulose, and each serving of the Pre+Post+Probiotics Product contains approximately 1 gram.

**D. <u>The Products Violate the FDA Nutrient Content Regulations</u>**

32. Congress empowered FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act,

21 U.S.C. § 301 et seq. The FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

33. FDA regulations distinguish mandatory or permitted declarations within the Supplement Facts panel from nutrient-content claims appearing elsewhere on a label or in labeling. Information appearing as part of the Supplement Facts panel is not itself a nutrient-content claim. 21 C.F.R. § 101.13(c). By contrast, the Zero Sugar Representation appears outside the Supplement Facts panel on the Products' front labels and expressly characterizes the level of sugar in the Products.

34. Nutrient-content claims are strictly forbidden unless specifically allowed under FDA regulations. 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D . . . .").

35. The Zero Sugar Representation is a nutrient-content claim because it expressly characterizes the level of sugar. 21 C.F.R. § 101.13(b). As such, it is governed by 21 C.F.R. §§ 101.13 and 101.60(c)(1).

36. Section 101.60(c)(1) specifically governs the use of the "zero sugar" nutrient-content claim at issue here. As relevant here, paragraph (i) provides that a zero sugar claim may not be used on the label or in labeling of a food unless:

> "The food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving."

37. Paragraph (ii) separately provides that the claim may not be used on the label or in labeling of a food unless:

> "The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of

ingredients, which states 'adds a trivial amount of sugar,' 'adds a negligible amount of sugar,' or 'adds a dietarily insignificant amount of sugar.'"

38. The requirements of 21 C.F.R. § 101.60(c)(1)(i)–(ii) are conjunctive; each must be satisfied.

39. The Products do not satisfy subsection (i). Section 101.9(c)(6)(ii) defines Total Sugars as "the sum of all free mono- and disaccharides." Allulose is a free monosaccharide and falls squarely within that definition. Approximately 2 grams is four times 0.5 gram, and approximately 1 gram is twice 0.5 gram. The Products therefore cannot satisfy § 101.60(c)(1)(i)'s requirement that they contain less than 0.5 gram per reference amount customarily consumed and per labeled serving.

40. The Products independently violate § 101.60(c)(1)(ii). Allulose is a sugar ingredient, yet its listing is not followed by an asterisk keyed to any prescribed statement that it adds a trivial, negligible, or dietarily insignificant amount of sugar. This condition contains no quantity threshold and applies to the Zero Sugar Representation regardless of the amount of allulose.

41. FDA's nonbinding allulose guidance does not alter either failure. The guidance announces enforcement discretion, pending rulemaking, for excluding allulose from the gram amounts of Total Sugars and Added Sugars declared on Nutrition and Supplement Facts labels. It does not amend § 101.9(c)(6)(ii), address § 101.60(c)(1), or purport to authorize an outside-panel "Zero Sugar" claim.[17]

42. Because the Products bear false, misleading, and impermissible outside-panel nutrient-content claims, they are misbranded under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.12(b), 101.13(a), (b), (b)(1), and (c), 101.36(b)(1)(i), and 101.60(a)(1)–(3), (c)(1). Plaintiff does not seek to enforce the FDCA directly. He seeks relief under independently enforceable state consumer-protection and warranty laws, including California's Sherman Law provisions adopting requirements identical to federal food-labeling requirements, and independently alleges that the Zero Sugar Representation misleads reasonable consumers.

[17] U.S. Food & Drug Administration, The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry 1, 8–9 (Oct. 2020), https://www.fda.gov/media/123342/download.

**E. Defendant's Conduct Violates California's Food Labeling Laws**

43. Defendant's labeling, including the package-front Zero Sugar Representation, and its distribution and sale of the Products violate the misbranding provisions of California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), which adopts federal food-labeling regulations as California regulations. Cal. Health & Safety Code § 110100(a).

44. Defendant's labeling, distribution, and sale of the Products violate the Sherman Law's misbranding provisions, including:

(a) Section 110660 (a food is misbranded if its labeling is false or misleading in any particular);

(b) Section 110670 (a food is misbranded if its labeling does not conform with the requirements for nutrient-content or health claims set forth in 21 U.S.C. § 343(r));

(c) Section 110760 (making it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded);

(d) Section 110765 (making it unlawful for any person to misbrand any food); and

(e) Section 110770 (making it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food).

45. Defendant's labeling, distribution, and sale of the Products also violate the Sherman Law's false-advertising provisions, including:

(a) Section 109885, which defines "advertisement" to include representations on products and their packages, and Section 110390, which prohibits dissemination of food advertisements that are false or misleading in any particular;

(b) Section 110395 (making it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food);

(c) Sections 110398 and 110400 (making it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised).

46. Because the Products bear "ZERO SUGAR" nutrient-content claims despite containing approximately 2 grams of allulose per serving in the Apple Cider Vinegar and

Ashwagandha+ Products and approximately 1 gram per serving in the Pre+Post+Probiotics Product, the Products are misbranded and falsely advertised under California law, and Defendant's labeling, distribution, and sale of the Products are unlawful.

**F. <u>Reasonable Consumers Cannot Detect Defendant's Deception</u>**

47. Reasonable consumers have no reason to search the side or back panels when presented with the conspicuous front-panel representation that the Products contain "ZERO SUGAR." Consumers are not expected to look beyond a misleading representation on the front of a package to discover that the representation is false. But even if they did, the Supplement Facts panels declare 0 grams of Total Sugar and 0 grams of Added Sugar. The Other Ingredients statements identify Allulose but do not state that allulose is a free monosaccharide or sugar. Allulose is not a common household name. Reasonable consumers, including Plaintiff, are unlikely to recognize the term or to infer from the ingredient list alone that it is a sugar.

48. Consumers are also not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry. Defendant is responsible for ensuring that its express labeling claims are truthful and not misleading.

**G. <u>Defendant Knew the Zero Sugar Representation Was False</u>**

49. Defendant knew, or should have known, that the Zero Sugar Representation was false, misleading, deceptive, and unlawful when it marketed, advertised, labeled, distributed, and sold the Products. Specifically, Defendant knew that (a) the Products contain allulose; (b) allulose is a sugar; (c) the Zero Sugar Representation communicated that the Products contained no sugar; (d) reasonable consumers would rely on the Zero Sugar Representation when purchasing; (e) consumers would not receive the represented benefit of the bargain; (f) the Zero Sugar Representation enabled Defendant to charge a premium; and (g) the ingredient statements did not contain the marker prescribed by § 101.60(c)(1)(ii).

50. Defendant, as the formulator, marketer, and distributor of the Products, controlled, authored, supplied, authorized, approved, adopted, or materially participated in making the Zero

Sugar Representation on the Products' front labels. Defendant could have stopped using the Zero Sugar Representation, ensured that it was true, or used any required qualification. Despite its knowledge that consumers reasonably rely on the Zero Sugar Representation, Defendant chose to continue using it, thereby causing consumers to buy or overpay for the Products.

**H. Defendant's Zero Sugar Representation Injured Plaintiff and the Classes**

51. Defendant concealed or failed to disclose material facts about the Products, including (a) allulose's status as a monosaccharide sweetener; (b) the inferred material quantity of allulose; (c) Defendant failed to disclose that allulose is a monosaccharide sugar and that the Products, as labeled, do not conform to the Zero Sugar Representation or 21 C.F.R. § 101.60(c)(1)(ii); (d) the facts that render the Zero Sugar Representation false, misleading, or noncompliant under 21 C.F.R. § 101.60(c)(1)(i)–(ii); and (e) the fact that the Products are misbranded under federal and California law when sold bearing the Zero Sugar Representation.

52. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive Zero Sugar Representation and omissions, Defendant injured Plaintiff and the Class Members in that they: (a) paid money for Products that were not as represented; (b) paid a premium for the Products; (c) were deprived of the benefit of their bargains; and (d) with respect to Plaintiff and the California Subclass, purchased misbranded Products that could not lawfully have been sold because they violate FDA regulations and California's Sherman Law.

**I. Plaintiff Lacks an Adequate Remedy at Law**

53. Plaintiff lacks an adequate remedy at law for the future harm described above. Damages cannot remedy his inability to rely on Defendant's Zero Sugar Representation when deciding whether to purchase the Products in the future. Only injunctive relief requiring Defendant to cease or correct the misleading Zero Sugar Representation can address that prospective harm.

54. Equitable relief is also necessary because legal remedies may prove inadequate to provide complete relief, including restitution measured by the difference between the prices Plaintiff and Class Members paid and the value of the Products as received, which may not be coextensive with damages.

55. Equitable relief is additionally appropriate because the statutes of limitations for the asserted causes of action vary. The UCL carries a four-year limitations period, which may reach purchases not fully remediable under other causes of action.

56. The scope of actionable misconduct under the FAL and UCL is also broader than under the other causes of action asserted here. The FAL and UCL prohibit Defendant's fraudulent package-labeling scheme. Plaintiff's warranty and common-law claims are more limited, focusing on duties arising from Defendant's Zero Sugar Representation at the point of purchase. The UCL may also borrow statutory prohibitions that do not themselves create a private cause of action.

## CLASS ACTION ALLEGATIONS

57. Plaintiff brings this action on behalf of himself and all others similarly situated under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3). The proposed classes are defined below (collectively, the "Classes"):

> **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.
>
> **Multi-State Consumer Protection Subclass:** All persons who, during the maximum period permitted by law, purchased one or more of the Products for personal use in a state with a consumer-protection statute materially similar to the statutes identified herein.
>
> **New York Subclass:** All persons in New York who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.
>
> **California Subclass:** All persons in California who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.

58. The Classes do not include: (1) Defendant or its officers or directors; (2) the Judge or Magistrate Judge assigned to this action; (3) the assigned Judge's or Magistrate Judge's staff and family; or (4) Plaintiff's counsel or Defendant's counsel.

59. Plaintiff reserves the right to amend the class definitions and add classes or subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

60. **Community of Interest:** There is a well-defined community of interest among members of the Classes, and the disposition of their claims in a single action will provide substantial benefits to all parties and to the Court.

61. **Numerosity:** While the exact number of Class Members is unknown to Plaintiff and can be determined only through discovery, upon information and belief, they number at least in the thousands, and joinder is impracticable. Class Members may be notified through Defendant's and third-party retailers' distribution and sales records and by publication.

62. **Existence and Predominance of Common Questions of Law and Fact:** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual members. These common legal and factual questions include, but are not limited to:

(a) Whether allulose is a free monosaccharide and sugar;

(b) Whether each serving of the Apple Cider Vinegar and Ashwagandha+ Products contains approximately 2 grams of allulose, each serving of the Pre+Post+Probiotics Product contains approximately 1 gram of allulose, and the Products fail the governing conditions for the Zero Sugar Representation, including 21 C.F.R. §§ 101.13 and 101.60(c)(1);

(c) Whether reasonable consumers would understand Defendant's representations and warranties concerning the Products to be untrue or misleading;

(d) Whether Defendant's representations and warranties were material;

(e) Whether the Products are misbranded under federal law and, with respect to the California Subclass, California law;

(f) Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

(g) Whether Plaintiff and Class Members suffered damages as a result of Defendant's actions and the amount of those damages;

(h) Whether Plaintiff and Class Members are entitled to statutory damages; and

(i) Whether Plaintiff and Class Members are entitled to attorneys' fees and costs.

63. **Typicality:** Plaintiff's claims are typical of those of other Class Members because Plaintiff was exposed to Defendant's Zero Sugar Representation, purchased a Product in reliance on it, and suffered the same type of economic loss.

64. **Adequacy:** Plaintiff will fairly and adequately represent and protect the Classes' interests as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiff has no interests adverse to the Classes, is committed to vigorous prosecution, and has retained skilled and experienced counsel.

65. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of the asserted claims under Federal Rule of Civil Procedure 23(b)(3) because the expense and burden of individual litigation make it economically infeasible for Class Members to seek redress outside a class action. Even if Class Members could afford individual litigation, the burden on the courts would be substantial. Individualized litigation would risk varying or contradictory judgments and magnify delay and expense through repeated trials of the same factual issues. By contrast, maintaining this action as a class action with respect to some or all issues presents fewer management difficulties, conserves party and judicial resources, and protects each Class Member's rights. Plaintiff anticipates no difficulty managing this action as a class action. Classwide relief is essential to compel compliance with applicable consumer-protection laws, and separate actions could subject Defendant to inconsistent obligations.

## CAUSES OF ACTION

### COUNT I
### Violation of N.Y. Gen. Bus. Law § 349
### (On Behalf of Plaintiff and the New York Subclass)

66. Plaintiff hereby incorporates the foregoing allegations as if fully set forth herein.

67. Plaintiff brings this claim individually and on behalf of the New York Subclass against Defendant.

68. New York General Business Law § 349 declares unlawful "[u]nfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a).

69. Defendant is a "person" engaged in "business, trade or commerce" within the meaning of GBL § 349, and its marketing, labeling, distribution, and sale of the Products to New York consumers constitute business, trade, or commerce in New York.

70. Defendant's conduct was consumer-oriented. Defendant marketed and sold the Products to the public through uniform front labeling directed to consumers, including New York consumers. Defendant profited by making the Zero Sugar Representation even though the Products contain sugar in the form of allulose.

71. Defendant engaged in deceptive acts and practices by falsely representing on the Products' front labels that the Products contain zero sugar even though they contain sugar in the form of allulose.

72. The Zero Sugar Representation was material and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

73. A reasonable consumer would understand the Zero Sugar Representation to mean that the Products contain no sugar when, in fact, they contain allulose.

74. Plaintiff and members of the New York Subclass were injured as a result of Defendant's deceptive acts and practices.

75. In reliance on the Zero Sugar Representation, Plaintiff and members of the New York Subclass paid a premium for Products they otherwise would not have purchased, or would have purchased only at a lower price, and received Products worth less than what they paid. Had they known that the Products contained allulose and were not accurately represented as containing zero sugar, Plaintiff and members of the New York Subclass would not have purchased the Products or would have paid significantly less for them.

76. Defendant made the Zero Sugar Representation willfully and knowingly and with reckless disregard for the truth.

77. On behalf of himself and the New York Subclass members, Plaintiff seeks to recover his actual damages or fifty dollars, whichever is greater; because Defendant's violation was willful and knowing, treble damages not to exceed one thousand dollars; and reasonable attorneys' fees and costs.

**COUNT II**
**Violation of N.Y. Gen. Bus. Law § 350**
**(On Behalf of Plaintiff and the New York Subclass)**

78. Plaintiff hereby incorporates the foregoing allegations as if fully set forth herein.

79. Plaintiff brings this claim individually and on behalf of the New York Subclass against Defendant.

80. New York General Business Law § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." N.Y. Gen. Bus. Law § 350.

81. GBL § 350-a(1) defines "false advertising" as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," and provides that, "[i]n determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations." N.Y. Gen. Bus. Law § 350-a(1).

82. Defendant's labeling and advertising of the Products constitute "advertising" within the meaning of GBL § 350-a(1).

83. Defendant engaged in false advertising by representing on the Products' front labels that the Products contain "ZERO SUGAR" even though they contain sugar in the form of allulose. Defendant's advertising was misleading in a material respect and failed to reveal facts material in light of the Zero Sugar Representation.

84. The Zero Sugar Representation was material and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

85. Plaintiff and members of the New York Subclass relied on Defendant's false advertising and were injured as a result. They paid a premium for Products they otherwise would not have purchased, or would have purchased only at a lower price, and received Products worth less than what they paid. Had they known the truth, Plaintiff and members of the New York Subclass would not have purchased the Products or would have paid significantly less for them.

86. Defendant made the Zero Sugar Representation willfully and knowingly and with reckless disregard for the truth.

87. On behalf of himself and the New York Subclass members, Plaintiff seeks to recover his actual damages or five hundred dollars, whichever is greater; because Defendant's violation was willful and knowing, treble damages not to exceed ten thousand dollars; and reasonable attorneys' fees and costs.

**COUNT III**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200 et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

88. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

89. Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

90. Defendant violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17210, by engaging in unlawful, unfair, and fraudulent business practices.

91. The UCL defines unfair competition to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200. A business act or practice is unlawful if it

violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows a person who has suffered injury in fact and lost money or property to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204.

92. Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code § 17200 *et seq.*

93. Defendant violated the UCL's proscription against unlawful business practices through its violations of the FAL, Cal. Bus. & Prof. Code § 17500 et seq.; the CLRA, Cal. Civ. Code § 1750 et seq.; and the Sherman Law, including Cal. Health & Safety Code §§ 110100, 110390, 110395, 110398, 110400, 110660, 110670, 110760, 110765, and 110770. Through the Sherman Law's adoption of federal food-labeling requirements, Defendant also violated the parallel standards in 21 U.S.C. § 343(a)(1), (r)(1)(A) and 21 C.F.R. §§ 101.9(c)(6)(ii), 101.12(b), 101.13(a), (b), (b)(1), and (c), 101.36(b)(1)(i), and 101.60(a)(1)–(3), (c)(1).

94. Defendant also violated the UCL's proscription against unfair business practices. Defendant's acts, omissions, misrepresentations, practices, and nondisclosures are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous. The gravity of Defendant's conduct outweighs any asserted benefit. There is no utility in representing as Zero Sugar dietary supplements that contain approximately 2 grams of allulose per serving in the Apple Cider Vinegar and Ashwagandha+ Products and approximately 1 gram per serving in the Pre+Post+Probiotics Product. Defendant's false and misleading representations also disadvantage competitors that either do not make similar claims or formulate their products to conform to them.

95. Plaintiff and California Subclass Members suffered substantial injury by buying Products they would not have purchased absent Defendant's unlawful, fraudulent, and unfair labeling, packaging, and omissions concerning allulose.

96. The gravity of Defendant's conduct outweighs any justification, particularly considering lawful alternatives. Defendant could have removed the Zero Sugar Representation,

accurately qualified it, or reformulated the Products. Its conduct offends established public policy and substantially injures Plaintiff and California Subclass Members.

97. Plaintiff and California Subclass Members could not reasonably have avoided their injury or known that the prominent labeling was inaccurate. Consumers lack specialized knowledge to identify allulose as a free monosaccharide and are not required to reconcile the front-panel promise with the Supplement Facts and ingredient information.

98. Under California Business & Professions Code § 17203, Plaintiff and California Subclass Members seek restitution, injunctive relief, attorneys' fees, and all other relief the Court deems proper.

**COUNT IV**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500**
**(On Behalf of Plaintiff and the California Subclass)**

99. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

100. Plaintiff brings this claim on behalf of himself and the California Subclass against Defendant.

101. Defendant's acts and practices have deceived or are likely to deceive California Subclass Members and the public. Defendant represents on the Products' front labels that they are "ZERO SUGAR," even though each serving of the Apple Cider Vinegar and Ashwagandha+ Products contains approximately 2 grams of allulose and each serving of the Pre+Post+Probiotics Product contains approximately 1 gram.

102. Defendant has disseminated uniform package labeling regarding the Products throughout California and the United States. The labeling was unfair, deceptive, untrue, or misleading within the meaning of Cal. Bus. & Prof. Code § 17500 and was intended and likely to deceive consumers.

103. In making and disseminating these statements, Defendant knew, or should have known, its package labeling was untrue or misleading. Plaintiff and California Subclass Members

based their purchasing decisions on the materially false Zero Sugar Representation and were injured in fact and lost money or property as a result.

104. Defendant's misrepresentations concerning the material facts described above constitute false and misleading advertising and therefore violate Cal. Bus. & Prof. Code § 17500 et seq.

105. Plaintiff and California Subclass Members seek restitution, injunctive relief, attorneys' fees, and all other relief the Court deems proper.

**COUNT V**

**Violation of Consumer Protection Statutes**

**(On Behalf of Plaintiff and the Multi-State Consumer Protection Subclass)**

106. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

107. Plaintiff brings this claim individually and on behalf of the Multi-State Consumer Protection Subclass against Defendant.[18]

108. Defendant represents that the Products are "ZERO SUGAR," even though each serving of the Apple Cider Vinegar and Ashwagandha+ Products contains approximately 2 grams of

---

[18] While discovery may alter the following, Plaintiff asserts that the states with similar consumer fraud laws under the facts of this case include, but are not limited to: Alaska Stat. § 45.50.471 et seq.; Ariz. Rev. Stat. §§ 44-1521 et seq.; Ark. Code § 4-88-101 et seq.; Cal. Bus. & Prof. Code § 17200 et seq.; Cal. Civ. Code § 1750 et seq.; Colo. Rev. Stat. Ann. § 6-1-101 et seq.; Conn. Gen. Stat. § 42-110a et seq.; 6 Del. Code § 2513 et seq.; D.C. Code § 28-3901 et seq.; Fla. Stat. Ann. § 501.201 et seq.; Ga. Code Ann. § 10-1-390 et seq.; Haw. Rev. Stat. § 480-2 et seq.; Idaho Code Ann. § 48-601 et seq.; 815 ILCS 505/1 et seq.; Ind. Code § 24-5-0.5-2 et seq.; Kan. Stat. Ann. § 50-623 et seq.; Ky. Rev. Stat. Ann. § 367.110 et seq.; La. Rev. Stat. § 51:1401 et seq.; Me. Rev. Stat. tit. 5, § 207 et seq.; Md. Code Ann., Com. Law § 13-301 et seq.; Mass. Gen. Laws ch. 93A et seq.; Mich. Comp. Laws § 445.901 et seq.; Minn. Stat. § 325F et seq.; Mo. Rev. Stat. § 407 et seq.; Neb. Rev. Stat. §§ 59-1601 et seq.; Nev. Rev. Stat. § 41.600 et seq.; N.H. Rev. Stat. § 358-A:1 et seq.; N.J. Stat. Ann. § 56:8 et seq.; N.M. Stat. Ann. § 57-12-1 et seq.; N.Y. Gen. Bus. Law § 349 et seq.; N.C. Gen. Stat. § 75-1.1 et seq.; N.D. Cent. Code § 51-15 et seq.; Ohio Rev. Code § 1345.01 et seq.; Okla. Stat. tit. 15, § 751 et seq.; Or. Rev. Stat. § 646.605 et seq.; 73 Pa. Stat. § 201-1 et seq.; R.I. Gen. Laws § 6-13.1-5.2(b); S.C. Code Ann. §§ 39-5-10 et seq.; S.D. Codified Laws § 37-24-1 et seq.; Tenn. Code Ann. § 47-18-101 et seq.; Tex. Bus. & Com. Code § 17.41 et seq.; Utah Code Ann. § 13-11-1 et seq.; 9 V.S.A. § 2451 et seq.; Va. Code §§ 59.1-196 et seq.; Wash. Rev. Code § 19.86.010 et seq.; W. Va. Code § 46A et seq.; Wis. Stat. § 100.18 et seq.; and Wyo. Stat. Ann. § 40-12-101 et seq.

allulose and each serving of the Pre+Post+Probiotics Product contains approximately 1 gram. The foregoing deceptive acts and practices were directed at consumers.

109. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

110. As a result of Defendant's deceptive practices, Plaintiff and Multi-State Consumer Protection Subclass Members suffered economic injury because they would not have purchased the Products or would have paid less had they known the Products did not conform to the Zero Sugar Representation.

111. Plaintiff and Multi-State Consumer Protection Subclass Members seek actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs as allowed by applicable law.

**COUNT VI**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

112. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

113. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant under New York law or, in the alternative, under the substantially similar laws of the states applicable to Nationwide Class Members.

114. To the extent required, Plaintiff asserts this cause of action in the alternative to his legal claims, as permitted by Federal Rule of Civil Procedure 8.

115. Defendant's false and misleading Zero Sugar Representation caused Plaintiff and Class Members to pay a price premium for the Products.

116. Defendant thereby received a direct and unjust benefit at the expense of Plaintiff and Class Members.

117. Plaintiff and Class Members seek the return of that unjust benefit.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

a) For an order certifying the Classes under Fed. R. Civ. P. 23, naming Plaintiff as representative of the Classes, and appointing Plaintiff's Counsel as Class Counsel;

b) For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

c) For actual and statutory damages available under the asserted causes of action;

d) For prejudgment interest on all amounts awarded;

e) For restitution to the extent permitted by applicable law;

f) For injunctive relief as pleaded or as the Court may deem proper;

g) For an order awarding Plaintiff's and the Classes' reasonable attorneys' fees, expenses, and costs of suit; and

h) For such other and further relief as the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: September 1, 2026

Respectfully submitted,

**GUCOVSCHI LAW FIRM, PLLC.**

By: /s/ Adrian Gucovschi
Adrian Gucovschi (State Bar No. 360988)
Nathaniel Haim Sari (State Bar No. 362634)
140 Broadway, 46th Floor
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com
nathaniel@gucovschilaw.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
jglatt@bursor.com

Attorneys for Plaintiff